Joynes, J.
By the 6th section of the act to incorporate the Lynchburg and Tennessee railroad, passed March 24,1848, the common council of the town off Lynchburg was authorized, by deed, bond or otherwise, under the seal of the corporation, to guarantee the payment of six per cent, interest to her citizens and. *663 other stockholders in the said railroad company, in semi-annual dividends, upon an amount not exceeding half a million of dollars. The 7th section gives to the said common council power to take in the stock so guaranteed, and to issue bonds or scrip therefor bearing six per cent, interest. The 9th section gives the said council authority “to assess and collect taxes upon the lands, property, and persons of all persons within the town proper and the corporation, and for half a mile round about and beyond its present tax-paying limits, for the foregoing purpose only. Provided, that the assessments so made shall be equal.” The name of the railroad company was subsequently changed to the Virginia and Tennessee railroad company; to which latter company the benefit of these provisions was transferred by statute. The plaintiffs in error, residing within half a mile of Lynchburg, brought this action in March, 1861, against the collector of taxes for the city of Lynchburg, to recover the amount assessed upon and collected from them, under the 9th section above referred to, upon the ground that the provision of that section is unconstitutional and void. A special verdict was found, upon which the Circuit court gave judgment for the defendant, which was affirmed in the District court by an equal division of the judges. The precise question we have to decide is, whether it was competent for the Legislature to delegate to the common council of Lynchburg the power to lay and collect a tax, for the purpose mentioned in the statute, upon persons and property outside of the corporate limits.
This question arises under the constitution of 1830, which was in force on the 24th day of March, 1848. There is no provision in the body of that constitution imposing any restriction upon the Legislature in reference to the power of taxation. The only provision on that subject, in the entire instrument, is contained in *664 article 6 of the Bill of Bights, in these words: “That elections of members to serve as representatives of the people in assembly ought to be free; and that all men having sufficient evidence of permanent common interest with, and attachment to, the communitv, have the , , , ” ’ . , „ right oí suffrage, and cannot be taxed or deprived of their property for public uses, without their own consent or that of their representatives so elected, nor bound by any law to which they have not in like manner assented, for the public good.”
The Legislature is vested by the constitution with all legislative power, except so far as the exercise of any such power is prohibited or restrained by that constitution, or by the constitution of the United States. It may authorize the authorities of a county or city to impose a tax for a purpose of special interest to their people, though it is likewise of such general and public interest as to authorize a tax upon the people of the whole State. Goddin v. Crump, 8 Leigh 120. A power which it might thus delegate it might exercise itself. The whole power of taxation belonged, under the com stitution, to the Legislature; a city or county had none, except such as the Legislature might choose to give it. Brom considerations of policy and convenience, the power of local taxation has usually been conferred upon those municipal bodies or their officers. "Where the power of laying a tax has been delegated to such local authorities, they may, in strictness of language, be said to be the “representatives” of the people, by whom the tax is imposed, within the language of the Bill of Bights; provided they are eligible by the people. And yet, in a legal sense, the tax in any such case is imposed by the representatives of the people in the Legislature; the power, which belongs to them alone under the constitution, being exercised, pro hae vice, by those to whom they have seen fit to delegate it. The tax being thus imposed by the power and autho *665 pity of the Legislature alone, it follows that it might as well be delegated to local authorities who do not represent the people, as having been elected by them: That, it might be delegated to the county court, whose members, under the constitutions of 1776 and 1830, were not elected by the people or responsible to them in any way. Case of County Levy, 5 Call 139; Harrison Justices v. Holland, 3 Gratt. 247. So the power might be delegated to the school commissioners of a particular district, who are not the general municipal authorities of the county. Bull & als. v. Read &c., 13 Gratt. 78.
"When the power to impose a tax is thus delegated to local authorities, they do not exercise their power under the authority which belongs to them as local officers. They exercise only the special authority delegated to them by the Legislature, in the particular case, and for the particular purpose. On principle, I can imagine no reason why the power might not as well be delegated to any other persons, in the discretion of the Legislature. . The members of the Legislature are the representatives of the people referred to in the Bill of Bights, section 6; otherwise the cases cited from 5 Call and 3 Grattan were not well decided. Such, too, is the plain meaning of the language. And it seems plain, from the language, that this provision of the Bill of Bights was not intended ■as a restraint upon the Legislature in exercising the ■power of taxation, but was only intended to affirm, in -general terms, a fundamental principle of free government.
The several constitutions of the State of New York, down to and including that of 1846, like our constitu-. tion of 1830, imposed no restriction upon the power of the Legislature in respect to the taxation of properly. There was a restriction in reference to a capitation tax, which it is not important to notice further. People v. *666 Mayor, &c. of Brooklyn, 4 Comst. R. 419; Town of Guilford v. Supervisors of Chenango County, 3 Kern. R. 143. The Legislature had the same plenary power, in each case over the whole subject of taxation, and no restrictions could be implied, on general principles, in one case, that would not equally be implied m the other. The New York cases may, therefore, be cited as cases in point, upon the powers of the Legislature of Virginia, on the subject of imposing taxes, under' the constitution of 1830.
The latest of the New York cases is People v. Lawrence, 41 New York R. 137, where the general result of the cases is thus summed up : “ The settled principles to be deduced from these cases are, that the sovereign power of taxation is lodged in the Legislature; that the power of taxing, and the power of ajiportioning taxation, are identical and inseparable; that there is no constitutional restraint upon the exercise of this power; that the right of determining what portion of' the public burdens, by way of taxation, shall be borne by any individual, or class of individuals, must be determined by the Legislature; that, however much this-power may be abused by the Legislature, the only check upon it is the responsibility of the legislative body to its constituents. As taxation is indisputably a legislative power, and as the constitution contains no' restriction upon the taxing power of the. Legislature,, redress against unjust taxation must be sought in the same way, and no other, as redress against unjust and oppressive legislation, in the general enactment off laws, is sought. The judicial department of the government can afford no redress in such cases.” In that . case, the Legislature authorized and directed commissioners to be appointed by the Supreme court, who were empowered to enter into a contract for a certain local improvement in the city of Brooklyn, and to assess the amount payable under the contract, together *667 with the expenses of the commission, the latter not to exceed $5,000, upon the lots of land in a certain district in the city of Brooklyn, laid off and designated hy the act. The Legislature thus determined that the improvement would be of such special benefit to the adjacent property, that the expense of it should be borne by the owners of such adjacent property. The Supreme court, in the same case (36 Barb. R. 177), said: “ The courts have nothing to do with the correctness or incorrectness of this legislative opinion, and must assume the fact to be as the Legislature assume or declare it. The statute proceeds to describe and create a district, and to provide for assessing the amount of this damage and expenditure upon the property in that district. This is clearly a legitimate exercise of the taxing power, under the doctrines of the leading cases of People v. Mayor, &c. of Brooklyn, 4 Comst. R. 419, and Brewster v. City of Syracuse, 19 New York R. 116. The wisdom or justice of the taxation is not a subject of judicial enquiry; nor is the purpose for which the tax is to be imposed. The Legislature are not confined in such taxation to existing political or civil districts. They may create a district for the purpose of taxation or assessment; as they did in both the cases cited. They may impose the tax equally or pro rata upon all property in the district thus formed, pro re nata, as was done .in the Syracuse case, or upon a rule of estimated benefits to different owners or individuals, as in the well known Brooklyn case.”
The principles thus established in blew York cover all the points of this case.
It has been urged that the statute under consideration in this case, is obnoxious to that provision of the State constitution which provides that private property shall not be taken for public use without just compensation. That provision has no application to this case. The statute we are considering relates to the imposi *668 tion of a tax: the constitutional provision relates to the exercise of the right of eminent domain. Gilman v. Sheboygan, 2 Black U. S. R. When property is taken under the right of eminent domain, the owner is entitled to special compensation in money. When mo- . , . , . ney is exacted under the power of taxation, the taxpayer .is entitled to no special compensation. The law supposes him to be compensated by the benefits he receives from the uses to which the money is applied. 4 Comst. R. 419.
It has been argued, also, that the principle on which this tax has been imposed is highly unjust in itself, and might be so abused in practice as to lead to great oppression to the tax-payers outside of the city. I am not called upon to controvert this. But the possibility of abuse, or the danger of it, does not show, or tend to.show, that the power does not exist. Besides, whatever abuse may occur in the exercise of this power, ' cannot be redressed by the courts. In McCulloch v. State of Maryland, 4 Wheat. R. 368, 428, Ch. Justice Marshall said: “ It is admitted that the power of taxing the people and their property is essential to the very existence of government, and may be legitimately exercised on the subjects to which it is applicable, to the utmost extent to which the government may choose to carry it. The only security against the abuse of this power is found in the structure of the government itself. In imposing a tax, the government acts upon its constituents. This is in general a sufficient security against onerous and oppressive taxation.”
Again, in Providence Bank v. Billings, 4 Peters R. 514, the same learned judge said: “This vital power [of taxation] may be abused, but the interest, wisdom ■and justice of the representative body, and its relations with its constituents, furnish the only security against unjust and excessive taxation, as well as against unwise legislation.” See also the New York cases above cited.
*669 But if we had authority to give redress against abuses in the exercise of the power of taxation, there would be no ground for interference in the present case. The tax was imposed under the power and authority of the Legislature, by a body of men to whom they saw fit to delegate it. These persons were municipal officers of Lynchburg, under whose charter and laws they exercised certain authority within the limits of that city. The Legislature conferred upon them other authority, extending over Lynchburg and also over certain adjacent territory. This superadded authority is distinct from, and independent of, their general authority as municipal officers of the city; as much so as if they had not been the same persons. "When they exercise this special and superadded authority, they do not do so, in contemplation of law, as the common council of Lynchburg, hut as a body of men to whom a special authority has been delegated by the Legislature. The Legislature in the exercise of its discretion, chose to throw the town of Lynchburg, as it then stood, and the adjacent territory for half a mile around, on every side, into one district, for the purpose of this tax. It had a right to do so. It assumed that the persons and property in the space outside the city had the same special interest in the construction and equipment of the Tennessee road, which it was supposed would ultimately reach Memphis (see the charter), as those inside the city had; and that both those inside and those outside had such a special interest in the road as to authorize a special tax upon them. On these points, as held in the eases cited from New York, the determination of the Legislature was conclusive on the courts. To hold otherwise would he to hold that the courts have power to control the Legislature in a matter of legislative discretion. Moreover, at the very same session, the residents and owners of property *670 within, half a mile around Lynchburg had petitioned the Legislature for the passage of a law in respect to the Richmond and Ohio railroad company, precisely similar to that now complained of in respect to the Tennessee road. Journal House of Delegates 1847-8, p. 74. The law ivas passed accordingly, authorizing the common council to impose a tax on persons and property outside the city limits, in the identical words subsequently used in the act now under consideration. Acts of 1847-’8, p. 187, § 4. Why should the Legislature have supposed, or why should the court suppose, that those persons regarded this as an oppressive or unjust mode of taxation ? Why should it be supposed that they would disavow an identity of interest with Lynchburg, in respect to one of these roads, any more than the other ? The Tennessee road ran, or was to run, through the city of Lynchburg, and through the ■outside territory comprehended in the district laid off for taxation. It is not known where the other road was to run, but it could not have had a line more advantageous to these persons. We may fairly eonjecture that there was a greater probability of the guarantee doing some good towards the construction and equipment of the Tennessee road, because it has turned out that that road has long been completed, with its connections extended to Memphis; while the Ohio road, so far as I know, was never organized. Besides, the tax now complained of was never brought to the test of legal proceedings; nor, as far as appears, complained of until this suit was brought, in 1861.
It is worthy of notice, too, that several successive ' Legislatures have substantially affirmed the validity of the 9th section of the act of March 24, 1848, authorizing the imposition of the tax which is the subject of complaint in this action. Acts of 1847-8, p. 186, § 9; same acts, p. 187, § 4; Acts of 1855-’6, p. 168, § 1; *671 Acts of 1866-% p. 473, § 73; Acts of 1870-% p. 5, §.8.
I am of opinion, therefore, that the judgment ought to he affirmed.
,Staples, J., dissented.
The other judges concurred in the opinion of Joynes, J.
Judgment affirmed.